```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
```

| | | |
|---|---|---|
| IRWIN GELTZER, | : | |
| | : | HONORABLE JOSEPH E. IRENAS |
| Plaintiff, | : | |
| | : | CIVIL NO. 09-3289 (JEI/KMW) |
| v. | : | |
| | : | |
| VIRTUA WEST JERSEY HEALTH | : | **OPINION** |
| SYSTEMS, | : | |
| | : | |
| Defendant. | : | |

**APPEARANCES:**

SMITH MARCINO BOWMAN
By: Andrew M. Smith, Esq.
10 N. Chestnut Avenue
Maple Shade, New Jersey 08052
        Counsel for Plaintiff

FOX ROTHSCHILD LLP
By:  William M. Honan, Esq.
     Sarah Beth Johnson, Esq.
Midtown Building, Suite 400
1301 Atlantic Avenue
Atlantic City, New Jersey 08401
        Counsel for Defendants

**IRENAS**, Senior District Judge:

   Plaintiff, Irwin Geltzer, brings this age discrimination and retaliation suit against his former employer, Defendant Virtua West Jersey Health Systems ("Virtua").  Geltzer, who was a part-time nuclear medicine technologist at Virtua, asserts that because of his age Virtua twice rejected him for a full time position and then fired him.  Virtua moves for summary judgment.

For the reasons stated herein, the Motion will be granted.[1]

## I.

From 2002 to 2008 Geltzer was employed by Virtua hospital as a part time, "*per diem*" nuclear medicine technologist. *Per diem* technologists cover certain hours when there is no regular technologist on duty at the hospital. On a typical day, Geltzer was scheduled to be "on-call" for two to five hours. He was paid a minimal hourly rate (approximately $5.00 per hour) for simply being available while on-call. If Geltzer was actually called into the hospital to perform a test, he was paid at least $34.50 per hour, and Virtua guaranteed payment for two hours of work, even if the test performed was completed in less than two hours. (Leshik Supp. Cert. ¶¶ 4-5)

In late August or early September 2007, a full-time nuclear medicine technologist position became available. Geltzer testified,

> A: . . . I went over to Debbie [Grigioni] and inquired about the position. And her comment to me was, you really don't want to work full-time, you are getting old. And I didn't really-- this was late on a Friday evening and I didn't really think much of it.
>
> I came back in the next workday. I said, yeah, I do want to apply for [the position].

---

[1] This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

```
Q:   You told that to Debbie?

A:   Correct.

Q:   And what did Debbie say?

A:   Okay.
```

(Geltzer Dep. Vol. I p. 94-95)  At the time, Geltzer was approximately one month away from his 65th birthday.  (Def's Ex. 13)

Three other people also applied for the position, and all four applicants-- Geltzer, Ed Quinn, Rakesh Patel, and John Kraus-- were given a panel interview.  The panel consisted of four Nuclear Medicine employees, including Grigioni.

Each panelist completed a one-page "interview rating" form at the end of each interview.  The form asked for a numerical ranking of "1 = least" to "5 = very good" rating of each candidate on seven attributes: "technical expertise"; "communication skills"; "team work"; "decisionmaking" / "willing to take direction"; "organization skills" / "time management"; "handling of criticism & feedback"; and "social desirability."[2]  (Def's Ex. 7)  Thus, 35 was the maximum score any one panelist could give an applicant.

Quinn received the highest average score of 33.4; and

---

[2] Apparently for illustrative purposes, the social desirability category included two rhetorical questions: "Is candidate being frank with their answers?" and "Is candidate adaptable to our culture?" (Def's Ex. 7)

3

Geltzer received the lowest average score of 30.3. (Def's Ex. 7) Notably, while one panelist gave every candidate a 35, each of the other three panelists gave Geltzer the lowest relative score.[3] (Id.; Regn Cert. ¶ 8; Pawlowski Cert. ¶ 8)

Quinn was chosen for the position.[4] When Geltzer asked Grigioni why he was not selected, she stated that she was "choosing to take the department in a different direction," which Geltzer interpreted as Grigioni wanting to take the department in a younger direction. (Geltzer Dep. Vol. II p. 13-15)

In November 2007, another full-time nuclear medicine technologist position became available. Geltzer and Patel applied for the position. This time, a panel of three conducted the interviews.[5] Again, Geltzer received the lowest average score. (Regn Cert. ¶ 10; Pawlowski Cert. ¶ 10) Patel was selected for the position.[6] Geltzer testified that Grigioni again told him that she wanted to take the department in "a

---

[3] Geltzer's scores were 28.5, 28.6 and 29. (Def's Ex. 7)

[4] Geltzer's EEOC intake questionnaire indicates that Ed Quinn was "25-30 years old." (Def's Ex. 13) There is no other evidence concerning Quinn's age in the limited record before the Court.

[5] The panel consisted of the same people as before, except that the person who awarded every candidate a 35 was not included. (Def's Statement of Undisputed Facts ¶ 29)

[6] Geltzer's EEOC intake questionnaire indicates that Rakesh Patel was "25-30 years old." (Def's Ex. 13) There is no other evidence concerning Patel's age in the limited record before the Court.

different direction." (Geltzer Dep. Vol. II p. 59-60)

Then in early 2008, Danielle Leshik, Lead Nuclear Technologist, began investigating discrepancies in the time records of another *per diem* employee. She certifies,

> [d]uring that investigation, I came across what I believed were inconsistencies in Mr. Geltzer's time records. Specifically, it appeared that Mr. Geltzer was recording time, and thus receiving pay, for 'on-call' duty during times when no patients were scheduled or recorded for testing or treatment. I checked Mr. Geltzer's time records and found that, in certain instances when Mr. Geltzer had clocked in, there was no corresponding patient test recorded in the Department log book. I also discovered that Mr. Geltzer had clocked in on numerous occasions when he was not in fact called in for a STAT test. . . .
> I then brought the evidence of Mr. Geltzer's violations to the attention of . . . Debra Grigioni. Ms. Girgioni did not ask me to review Mr. Geltzer's timesheets; nor did my investigation initially focus on Mr. Geltzer.

(Leshik Cert. ¶¶ 15-21)

On March 18, 2008, Grigioni met with Geltzer to inform him he was being fired for "clocking in on call without being summoned [and] clocking in on a call back for travel between divisions."[7]  (Geltzer Dep. Vol. II p. 90-92; Def's Ex. 8) Grigioni presented Geltzer with several documentary examples of his time clock discrepancies.  (Geltzer Dep. Vol. II p. 92, 95)

---

[7] It is apparently undisputed that if a *per diem* technologist is already at the hospital performing a test when called to do another test, Virtua does not allow him clock out and then clock back in for each test. (Leshik Supp. Cert. ¶6) Because the technologist is paid for a minimum of two hours for each call (Id. ¶ 5), clocking in and clocking out for overlapping tests at the hospital would result in higher pay.

According to Geltzer he responded, "if I had made these mistakes, I had been doing them for the last five years the same way, why now all of a sudden do I become terminated[?] There's no warning, no counseling, no nothing, all of a sudden you're digging into my pay records and terminating me." (Geltzer Dep. Vol. II p. 92)

Geltzer initially challenged his termination pursuant to Virtua's internal grievance procedure, but did not assert that his termination was based on discriminatory or retaliatory motives. (Def's Ex. 12) Later, after consulting with an attorney, Geltzer filed a charge of discrimination and retaliation with the EEOC. (Def's Ex. 13) The EEOC issued a "right to sue" letter on May 18, 2009. (Compl. Ex. A) This lawsuit followed.

Geltzer asserts claims of age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and New Jersey's Law Against Discrimination, N.J.S.A. 10-5:1 et. seq. Virtua moves for summary judgment.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

The Court first addresses Geltzer's retaliation claims before turning to his discrimination claims.

### A.

Both the ADEA and the LAD prohibit retaliation against an

7

employee who "oppose[s]" age discrimination. 29 U.S.C. § 623(d); N.J.S.A. 10:5-12. However, Virtua asserts, and the Court agrees, there is no evidence that during the relevant time period Geltzer ever stated to anyone that he believed Virtua discriminated against him because of his age. Indeed, Geltzer testified several times that he took no action about the discrimination he believes he experienced. (Geltzer Dep. Vol. II p. 14-17, 56-57, 59-60, 125-27)

Geltzer asserts that his inquiry to Grigioni about why he was not selected for the full time position filled by Quinn is opposition to discrimination. The Court disagrees. Geltzer testified that he merely asked Grigioni why she chose Quinn. (Geltzer Dep. Vol. II p. 12-13) Grigioni then answered that "she was taking the department in a different direction." (Id. p. 13) Geltzer then testified:

> Q: Did you ask what she meant by taking the department in a, quote, different direction?
>
> A: No, I did not.
>
> Q: What did you think that meant . . . ?
>
> A: I thought she was taking her department in a younger direction, meaning that she wanted all young people rather than someone who's a little older.
>
> Q: Did you say that at the time?
>
> A: No, I did not.

(Id. p. 13-14) Nothing in the record could lead a reasonable

factfinder to conclude that Geltzer engaged in activity protected by either the ADEA or the LAD by simply asking why he was not selected for the position. *Cf. Davis v. City of Newark*, 2011 U.S. App. LEXIS 4903 at \*6 (3d Cir. Mar. 10, 2011) (holding that because the plaintiff's "complaints to her superiors failed to identify any conduct proscribed by Title VII [or the LAD], they do not amount to 'protected activity,' and thus cannot form the basis for a retaliation claim" under either Title VII or the LAD). Accordingly, Virtua is entitled to summary judgment on the retaliation claims.

**B.**

As to the discrimination claims, the Court first addresses the ADEA claims and then the LAD claims.

**(1)**

*Gross v. FBL Financial Services, Inc.* holds,

> a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

129 S.Ct. 2343, 2352 (2009). Thus, contrary to Geltzer's assertion, Virtua does not have to prove that it would have taken

the same actions even if it had not considered Geltzer's age.[8] Rather, Geltzer must prove that his age was "'the reason' that [Virtua] decided to act." *Gross,* 129 S.Ct. at 2350.

The record evidence does not meet this standard with respect to any of the three adverse employment actions, i.e., (1) the failure to hire for the September 2007 opening; (2) the failure to hire for the November 2007 opening; or (3) Geltzer's termination.

Grigioni's lone comment that Geltzer did not "want" a full time position because he was "getting old"-- which occurred before Geltzer had even applied or interviewed for a full-time position-- is insufficient evidence to support a conclusion that but for Geltzer's age, Virtua would have hired him for a full time position and would not have fired him.[9]  "'Stray remarks . . . by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.'" *Fuentes v. Perskie*, 32 F.3d 759, 767 (3d Cir. 1994) (*quoting Ezold v. Wolf, Block, Schorr &*

---

[8] Geltzer argues that the burden-shifting analysis of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), a Title VII case, applies to his ADEA claim, but *Gross* explicitly rejected that argument. 129 S.Ct. at 2348-49 ("the Court's interpretation of the ADEA is not governed by Title VII decisions such as . . . *Price Waterhouse*.").

[9] Geltzer asserts that Grigioni's statement that she wanted to take the department in a different direction is direct evidence of age discrimination but a reasonable juror could not conclude that the explanation reflected discriminatory animus.

10

*Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)).

Geltzer's reliance on *Fakete v. Aetna, Inc.*, 308 F.3d 335 (3d Cir. 2002) is misplaced. In *Fakete*, the Third Circuit reversed the grant of summary judgment to an employer in an ADEA case based on a single conversation where Fakete's supervisor stated that, after a recent corporate reorganization, he was "looking for younger single people" and that consequently Fakete "would not be happy there in the future." *Fakete*, 308 F.3d at 336. Geltzer thus analogizes his case to *Fakete*, arguing that Grigioni's comment is very similar to the supervisor's comment to Fakete. However, even if this Court assumes *arguendo* that the comments are substantially similar[10], *Fakete* was decided before *Gross*. *Fakete's* holding is clear: "a reasonable jury could find, based on [the supervisor's] statement, that Fakete's age was more likely than not *a substantial factor* in [the supervisor's] decision to fire him." 308 F.3d at 339. After *Gross*, the bar is higher. It is not sufficient to establish that age was a substantial motivating factor in Virtua's decisions with regard

---

[10] There are significant differences between the conversation in this case and the conversation in *Fakete*.

In *Fakete*, within a month of a corporate reorganization of his employer, Fakete directly "inquired about his future with the company" to which his supervisor responded that "the new management . . . wouldn't be favorable to [Fakete] because they are looking for younger single people." 308 F.3d at 336.

In this case, Grigioni did not say that she was only looking to hire younger people for full-time positions or generally wanted the department to be staffed with younger technicians.

11

to Geltzer. *See Gross*, 129 S.Ct. at 2350 ("Our inquiry must therefore focus on the text of the ADEA to decide whether it authorizes a mixed-motives age discrimination claim. It does not."). As stated before, Geltzer must prove that but for his age, Virtua's decisions would have been different. His evidence cannot satisfy this standard.

Alternatively, Geltzer argues that even if his direct evidence theory fails, his claim still survives under the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), circumstantial evidence analytical framework.[11] The Court disagrees.

The Court will assume without deciding that Geltzer has established his prima facie case: "that [he] is forty years of age or older; second, that [Virtua] took [] adverse employment action[s] against [him]; third, that [he] was qualified for the position in question; and fourth, that [he] was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).[12]

---

[11] In *Smith v. City of Allentown*, the Third Circuit held that "the but-for causation standard required by *Gross* does not conflict with our continued application of the *McDonnell Douglas* paradigm in age discrimination cases" because the burden of persuasion always remains with the plaintiff in the *McDonnell Douglas* paradigm, only the "burden of production (i.e., of going forward) shifts." 589 F.3d 684 (3d Cir. 2009).

[12] The Court notes, however, that there is no admissible evidence as to either Quinn's or Patel's age. As noted at footnotes 4 and 6, Geltzer's EEOC intake questionnaire states

12

Virtua has put forth a legitimate non-discriminatory reason for why it did not hire Geltzer: his performance in his interviews was rated the lowest of all of the applicants by every panel member.  In the comments section of the evaluation form, each panelist expressed reservations about Geltzer.  One panelist wrote[13], "I don't think he <u>prefers</u> to take responsibility.  He wants to do [the] job & leave."  (Def's Ex. 7)(underline in original)  Another panelist wrote, "[h]e has done a great job in the capacity of an on-call / per diem tech where he is working alone, not alongside of his peers.  There is a question of whether or not he can adapt to working full time under the direction of others. . . . Weakness in computer skills."  (Id.)  Another panelist wrote, "[h]e has no desire to advance his position[;] just wants to be 'a tech.'  No growth potential. . . . Computer skills are not [his] strong point." (Id.)

Geltzer has put forth insufficient evidence to support a conclusion that Virtua's reason for not hiring him for a full time position was pretextual.  Geltzer argues that Grigioni's

---

that both employees were "25-30 years old" at the time but that evidence is inadmissible hearsay.  *See* Fed. R. Evid. 801, 802; *Smith v. City of Allentown*, 589 F.3d at 693 ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").  Additionally, Virtua asserts in its brief that Quinn and Patel were 39 and 35 years old respectively at the time they were hired.

[13]  The evaluation forms do not identify which panelist completed which form.

"getting older" comment "call[s] the credibility of [all the interview] evaluations into question." (Pl's Br. p. 23) The Court disagrees because the other panelists specifically certified that "Debra Grigioni did not influence my rating of the applicants," and that "the age of each applicant did not factor into my assessment." (Pawlowski Cert. ¶¶ 11, 12; Regn Cert. ¶¶ 11, 12). Nothing in the record suggests that the other panelists had any age bias.[14]

The Court also rejects Geltzer's argument that pretext can be inferred from the undisputed fact that every panelist gave Geltzer the highest possible score (i.e., 5) for his "technical expertise" whereas every panelist gave both Quinn and Patel 4s in that category. The interview rating forms make clear that technical expertise was only one of seven distinct qualities that were considered in the decision process. (Def's Ex. 7) The fact that Geltzer received higher scores in one category does not conflict with Virtua's explanation that it did not select him because his overall score was the lowest.

Virtua has also put forth a legitimate non-discriminatory

---

[14] Geltzer further argues that the other panelists' ratings should not be given weight because Grigioni was the ultimate decisionmaker. However, Geltzer puts forth no evidence supporting his contention that Grigioni alone made the decision about who to hire. Indeed, in opposition to the instant Motion for Summary Judgment, Geltzer submits no evidence of his own. He merely relies on the exhibits and limited deposition transcript excerpts submitted by Virtua.

14

reason for why it fired Geltzer: his time recording violations.

In support of his pretext argument, Geltzer does not put forth any evidence that he did not commit time recording violations[15], rather he asserts that the severity of his punishment-- termination-- was too harsh, and therefore belies Virtua's discriminatory motive.  According to Geltzer, he should have been warned, counseled, or received discipline short of termination.

The fact that Virtua decided to terminate Geltzer, alone, is insufficient evidence of pretext.  "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken." *Fuentes*, 32 F.3d at 764.  Geltzer must put forth evidence that he was treated inconsistently; for example, by proving that other younger employees with similar violations were not fired.  However, the record contains no such evidence.

The Court also rejects Geltzer's contention that Virtua did not comply with its own policy and procedure when it terminated Geltzer.  The relevant policy provides:

> It is the policy of Virtua Health to vigorously pursue any individual and/or situation involving falsification of records. . . .
>
> 1.   Upon discovery of suspected falsification of

---

[15] Geltzer's brief states that he "disputes the alleged . . . violations" (Pl's Brief p. 24) but puts forth no evidence to support a conclusion that Geltzer did not commit the violations.

>    records, the appropriate managers and/or the Director of Human Resources will conduct an investigation.
>
> 2. Dependent upon the outcome of the investigation, disciplinary measures may be taken, up to and including termination.

(Def's Ex. 10)  According to Geltzer, Virtua conducted no investigation, it simply "summar[ily] terminat[ed] [him] without even consulting [him] about the discrepanc[ies]." (Pl's Brief p. 24)  The undisputed record proves otherwise.  Virtua submits the certification of Danielle Leshik which explains the investigation she conducted.  Then Geltzer himself testified that Grigioni called a meeting with him, where she presented him with documentary examples of the time discrepancies and allowed him to respond.  (Geltzer Dep. Vol. II p. 92, 95)  The undisputed evidence demonstrates that Virtua complied with its own policy, and therefore Geltzer's pretext argument fails.

For the above stated reasons, Geltzer's ADEA claims based on (1) the failure to hire for the September 2007 opening; (2) the failure to hire for the November 2007 opening; and (3) Geltzer's termination fail under both his direct evidence theory and his pretext theory.  Summary judgment will be granted to Virtua on the ADEA claims.

**(2)**

Geltzer's LAD claims fail for very similar reasons.  New

Jersey has adopted the *McDonnell Douglas* analysis for pretext cases under the LAD, *see Bergen Commer. Bank v. Sisler*, 157 N.J. 188, 210-11 (1999), thus the Court's ADEA pretext discussion *supra* applies equally to Geltzer's LAD pretext claims.

With regard to Geltzer's direct evidence theory, the New Jersey Supreme Court has not yet addressed whether *Gross*'s holding will apply to direct evidence age discrimination claims under the LAD.  Currently, *Sisler*, which adopts the *Price Waterhouse* analytical framework, controls. *See* 157 N.J. at 208.  Thus, in order to establish his direct evidence age discrimination claim under the LAD, Geltzer has a "rigorous burden" to demonstrate "that age, *per se*, was a substantial factor in an adverse employment decision."  *Id.* at 209.  "The evidence produced must, if true, demonstrate not only a hostility toward members of the employee's class, but also *a direct causal connection* between that hostility and the challenged employment decision."  *Id.* at 208 (emphasis added).  Importantly, "stray remarks in the workplace, unrelated to the decisional process, [are] not sufficiently direct evidence of discrimination to justify requiring an employer to prove that its . . . decisions were based on legitimate criteria."  *Id.*

The Court concludes that Geltzer's conversation with Girgioni, where she stated that Geltzer didn't "want" a full time position because he was "getting old," is insufficient to support

17

a finding that Geltzer's age was a substantial factor in any of Virtua's adverse employment decisions.  As noted above, Grigioni's single remark was made outside the decisional process for the first full-time opening, and even more clearly outside the decisional process for the second full-time opening, and then for Geltzer's termination.  The evidence cannot support a finding that Grigioni's asserted age bias directly caused any of the adverse employment decisions.

Accordingly, Virtua is also entitled to summary judgment on the LAD age discrimination claims.

## IV.

For the foregoing reasons, the Court will grant Vitua's Motion for Summary Judgment.  An appropriate Order accompanies this Opinion.

Dated: May 20, 2011                        s/ Joseph E. Irenas
                                           **Joseph E. Irenas, S.U.S.D.J.**